**Brian BACIK, et al., Plaintiffs,**

**v.**

**Gregory PEEK, et al., Defendants.**

**No. 1:93 CV 0312.**

United States District Court,
N.D. Ohio,
Eastern Division.

May 14, 1993.

[redacted]

7. *See* 28 U.S.C. § 1447(d) (denying appellate review of a remand order based on lack of subject matter jurisdiction).

Bernard H. Niehaus, Richard Rieth, Cleveland, OH, for plaintiffs.

John Stephen Kluznik, Sr., Katherine A. Vierkorn, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for defendants.

### ORDER

SAM H. BELL, District Judge.

## I. INTRODUCTION

Currently before the court is defendants' motion to dismiss or in the alternative, to transfer the above captioned matter, Docket # 4. The plaintiffs have responded to this motion, to which defendants have replied. As is necessary with motions of this sort, we begin with a summary of plaintiffs' complaint.

The complaint, removed from the Cuyahoga County Court of Common Pleas, is brought by Ohio citizens Brian Bacik and Emil Bacik. The defendants are Gregory Peek, Michael Peek, Clayton Harris and the Safety & Performance Systems Corporation, all residents of Colorado. The complaint alleges that plaintiff Bacik, with the "coaching" of defendant Harris, purchased "a certain dragster" owned by Rick Holcomb at a price of $45,000.00. (Complaint at ¶¶ 9–10). During the period of time that plaintiffs were negotiating for the purchase of the dragster, they and Harris engaged in many phone conversation in which Harris referred to plaintiffs as "his partners". (Complaint at ¶ 13) Plaintiffs arranged for the car to be shipped to a carpet mill in Dalton, Georgia, where it was "picked up" by Harris and Michael Peek and taken to defendant Safety & Performance System's place of business in Colorado. (Complaint at ¶ 11) Shortly thereafter, the plaintiff received a check from defendant Peek in the amount of $22,500.00 to pay for their half of the dragster. The plaintiffs, in addition to their share of the purchase price purchased parts and equipment for the dragster at a cost of approximately $48,000.00. (Complaint at ¶ 14)

Plaintiffs and defendants never entered into a written agreement outlining the terms of their relationship. (Complaint at ¶ 14). On the 19th day of May, 1992, the three defendants:

in their individual capacity and also as representatives for Safety & Performance Systems, attended a meeting with the plaintiffs at the plaintiffs' place of business at 4775 Chaincraft Road, Garfield Heights, Ohio, to discuss the particulars of the arrangement between the parties for the operation of the dragster, and to determine what parts were needed for the upcoming season.

At that meeting, the plaintiffs advised the defendants that they were not looking for any profits from the operation of the drag-

ster and, for their investment, wanted a chance to work as part of the pit crew at the races.

Further, at that meeting, the defendants advised the plaintiffs that they had no money at the current time to buy the necessary parts, and it was at that time that the plaintiffs indicated that they would pay for these parts which, as set forth above, total approximately $48,000.00

(Complaint at ¶¶ 15–17)

The plaintiffs allege that they were not permitted to act as members of the pit crew at the races in the 1992 season, and were largely ignored by the defendants at the races which they did attend. (Complaint at ¶ 18) As a result, a dispute arose between plaintiffs and defendants regarding the plaintiffs' rights in this alleged business venture. The plaintiffs allege that defendants have failed to account for any earnings or expenses for the 1992 season and have denied plaintiffs any ownership interest in the drag racing car. (Complaint at ¶¶ 19–20)

On the basis of these facts, the plaintiff seek a declaration of the rights and legal relations between the parties.

## II. STANDARD OF REVIEW

The motion to dismiss filed by the defendants is based upon Federal Rule of Civil Procedure 12(b)(2). The rule provides, in pertinent part, as follows:

(b) **How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (2) lack of jurisdiction over the person....

Fed.R.Civ.P. 12(b)(2).

It is noted at the outset that when a defendant makes a personal jurisdiction challenge under Rule 12(b)(2), the plaintiff carries the burden of establishing that jurisdiction exists. *Serras v. First Tennessee Bank Nat'l Association,* 875 F.2d 1212, 1214 (6th Cir.1989); *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1168 (6th Cir.1988).

The magnitude of this burden varies, however, depending upon whether the trial court exercises its discretion to decide the issue on the motions or after a hearing. On this issue, the Sixth Circuit has provided the following guidance:

The case law establishes a settled procedural scheme to guide trial courts in the exercise of this discretion. If it decides that a motion can be ruled on before the trial, the court "may determine the motion on the basis of the affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). However the court handles the motion, the plaintiff always bears the burden of establishing that jurisdiction exists. *McNutt v. Gen'l Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 929 (6th Cir.1974). The weight of the plaintiff's burden, however, depends on whether the trial court chooses to rule on written submissions or to hear evidence on the personal jurisdiction issue (either pretrial or during trial). If the court rules on written submissions alone, the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, "by affidavit or otherwise[,] ... specific facts showing that the trial court has jurisdiction." *Id.* at 930. When the trial court has determined that the motion to dismiss for lack of personal jurisdiction can be decided upon these submissions, it "must consider the pleadings and affidavits in the light most favorable to the plaintiff." *Welsh v. Gibbs,* 631 F.2d 436, 439 (6th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981) (quoting *Poston v. American President [Lines], Ltd.,* 452 F.Supp. 568, 571 (S.D.Fla.1978). Thus, her burden is merely that of making a *prima facie* showing that personal jurisdiction exists. *Id.* at 438. If she meets that burden the motion to dismiss should be denied, "not withstanding any controverting presentation by the moving party." *Marine Midland Bank,* 664 F.2d at 904.

*Serras,* 875 F.2d at 1214. *See also American Greetings Corp.,* 839 F.2d at 1168–69. Restated:

> although a motion for summary judgment and a Rule 12(b)(2) motion are similar in some respects, "in sharp contrast to summary judgment procedure, ... the court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal." ... Dismissal is warranted only if all of the facts the plaintiff asserts "collectively fail to state prima facie case for jurisdiction...." Therefore, we must determine whether, basing its decision solely on the pleadings and affidavits and ignoring contrary assertions by [the defendants], the district court in the instant case [can] properly grant[ ] [the defendants'] 12(b)(2) motion.

*Market/Media Research, Inc. v. Union–Tribune Publishing Co.,* 951 F.2d 102, 105 (6th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992). In the instant case, the court is of the opinion that an evidentiary hearing is unwarranted, and so will resolve the issued based upon the parties' submissions. The issue, then, is whether plaintiffs have satisfied their burden of establishing a prima facie case for personal jurisdiction by setting forth specific facts in support thereof.

### III. LAW AND ANALYSIS

District courts sitting in diversity must apply the law of the forum state to determine whether it may exercise jurisdiction over the person of non-resident defendants. *Theunissen v. Matthews,* 935 F.2d 1454, 1459 (6th Cir.1991). Thus, in this case, we look to Ohio's long-arm statute, Ohio Revised Code § 2307.382. This statute enumerates nine ways in which a non-resident defendant can subject himself to the *in personam* (territorial) jurisdiction of Ohio courts. Of specific concern here is subsection (A)(1) of the statute, which provides that:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
>> (1) Transacting any business in this state

> ....

Ohio Rev.Code § 2307.381(A)(1).

The Ohio statute is considered to "extend to the outer reaches of due process...." *R.L. Lipton Distributing v. Dribeck Importers, Inc.,* 811 F.2d 967, 969 (6th Cir.1987). When this determination has been made, "the question in a particular case is whether the jurisdictional reach of the forum state's courts can be extended to non-residents consistently with due process." *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1167 (6th Cir.1988). "[T]hus, an Ohio personal jurisdiction analysis becomes an examination of constitutional limitations." *R.L. Lipton Distributing,* 811 F.2d at 969.

The starting point for any territorial jurisdiction analysis is the Supreme Court's opinion in *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), wherein the Court stated that:

> due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)). This "minimum contacts" doctrine has been reiterated and discussed by the Supreme Court with frequency. *See, e.g., Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987); *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

In the discussion of the "minimum contacts" doctrine, the federal courts have noted the distinction between so-called "specific jurisdiction" and "general jurisdiction". *See, e.g., Third Nat'l Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990). In *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 nn. 8 & 9, 104 S.Ct.

1868, 1872 nn. 8 & 9, 80 L.Ed.2d 404 (1984), the Court stated:

It has been said that when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising "specific jurisdiction" over the defendant.

. . . . .

When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising "general jurisdiction" over the defendant.

(citations omitted)

In the case at bar, it is indisputable that the plaintiffs' cause of action arises out of the defendant's putative contacts with Ohio. (*See* Defendants' Reply Brief, Docket # 9, at 2–3) ("[t]he parties are in agreement that the three part test established in *Southern Machine* ... applies to this action.") We are thus confronted with a "specific jurisdiction" case, in which the " 'relationship among the defendant, the forum, and the litigation' is the essential foundation of *in personam* jurisdiction." *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872 (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579–80, 53 L.Ed.2d 683 (1977)). In *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374 (6th Cir.1968) (Celebrezze, J.), "a case of specific jurisdiction", the Sixth Circuit "set forth a three-part test for determining whether, consistent with due process, personal jurisdiction may be exercised...." *Third National Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089–90 (6th Cir.1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990). Judge Celebrezze's test, anticipating contemporary legal thought and endorsed by literally decades of case law, requires the following:

[f]irst, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the reasonable exercise of jurisdiction over the defendant reasonable.

*Southern Machine,* 401 F.2d at 381. This test guides our inquiry.

In response to the defendant's motion, the plaintiffs have submitted that in March 1992, defendant Harris contacted Brian Bacik at his home in Brunswick Ohio to seek assistance in purchasing the dragster owned by the late Richard Holcomb. Defendant Harris' advice occurred during several long-distance telephone conversations. (Harris Aff. at ¶ 11) As a result, plaintiffs sent $45,000 to the seller in Georgia for the car, and desired to have their name placed on the car, to have T-shirts and uniforms to wear, and to work on the pit crew. (Harris Aff. at ¶¶ 11–12) The defendants picked up the car in Georgia, had more phone conversations with plaintiffs, and sent plaintiffs a check to reimburse them for one half of the purchase price of the racing car. (Harris Aff. at ¶ 13) After this occurred, the plaintiffs allege the following as fact:

On Monday, May 18, 1992, Clayton Harris telephoned my brother and me at our business location and requested that we make reservations for him, for Gregory Peek and Michael Peek at a motel in Fremont, Ohio.

On Tuesday, May 19, 1992, my brother, Emil, met Clayton Harris, Gregory Peek and Michael Peek at their motel in Fremont, Ohio, and then visited John Callie at Callie's Performance, Inc. to review his operation and attempt to acquire his sponsorship.

All parties concerned spent approximately three (3) hours at Callie's Performance, Inc., which included a private meeting for approximately forty-five (45) minutes between Emil Bacik, Clayton Harris and John Callie, President of Callie's Performance, Inc.

Upon termination of the meeting at Callie's Performance, Inc., Michael Peek and Gregory Peek went to Elyria, Ohio to deal with some business unrelated to either my brother or me, and my brother and I re-

turned with Clayton Harris to our place of business in Garfield Heights, Ohio.

Upon returning to Garfield Heights, Clayton Harris expressed the desire to review our business operation and meet with us privately to discuss the terms of the agreement.

After reviewing our business operation, Clayton Harris, as an officer and part owner of Safety Performance Systems, Inc., proceeded to discuss the upcoming racing season for approximately two (2) hours. We discussed what our crew duties were to be, and what documents we would need to gain entrance to the races. It was further agreed that the name Bacik Brothers would appear on the race car, and that we would provide the sum of ... $22,500.00 ... for one-half of the purchase price of the race car. It was further agreed at this meeting that my brother and I were not to receive any of the winnings of the car, but they were to be put back into the operation of the car; that our investment was limited to paying for one-half of the purchase price of the car and the parts necessary for the upcoming racing season. After agreeing to the foregoing, Clayton Harris agreed that, if this arrangement was not satisfactory in any way, the Peeks and/or Safety Performance Systems, Inc. would buy us out at the end of the season. Following this meeting, Clayton Harris and I proceeded to the motel in Strongsville, Ohio, that I had reserved for him and Peeks, and we went to dinner together that evening to further discuss the upcoming racing season.

On May 20, 1992, Gregory Peek, Michael Peek and Clayton Harris came to our business location in Garfield Heights, Ohio, for the purpose of touring the same, and to discuss the upcoming racing season. Clayton Harris, Gregory Peek and Michael Peek presented two parts lists that they had made up, the first of which they indicate was necessary to acquire for the upcoming racing season, and the second a sort of "wish list" to consider if the upcoming season were successful. The first list contained itemized parts that were absolutely necessary to be competitive; and, because we were told that neither Michael

Peek nor Gregory Peek had sufficient funds at that time to purchase the parts, we were asked to provide the financial assistance necessary to acquire them. We agreed to provide these funds, which we did by purchasing the parts from our Garfield Heights' office directly from the various suppliers in several states and having the parts shipped to Colorado.

We reiterated the terms of the agreement, which were arrived at with Clayton Harris on the previous day, and all parties at that meeting indicated their consent, and which included Clayton Harris' assurance that, if the terms of our agreement as outlined in the meeting on May 19 and 20 were not met to our satisfaction, the Peeks and/or Safety Performance Systems, Inc. would buy out our interest at the end of the 1992 season.

The agreement between the parties on how the operation would be financed and conducted was made in Garfield Heights, Ohio, during the meetings held on May 19 and 20, 1992.

(B. Bacik Aff. at ¶¶ 4–12)

In the case at bar, the defendants negotiated an ongoing business relationship with Ohio residents. Remembering that we are "obligated to ignore contrary assertions by the [defendants]", it must also be concluded, for the purposes of this motion, that the defendants, as individuals and as representative of the Safety & Performance Systems Corporation, travelled to this state, engaged in negotiations here, and created and entered into a business relationship (whether it be contractual or otherwise) in Ohio with Ohio residents. Thus, we must ask whether the defendants have purposefully availed themselves of the privilege of acting in Ohio or causing consequence in Ohio. The response to such a query must surely be in the affirmative. The purposeful availment requirement asks whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Surely, any reasonable defendant engaging in similar

contacts and contract could anticipate suit in Ohio. As noted by the Supreme Court:

> we have emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanction in the other State for consequences of their activities.

*Id.* at 473, 105 S.Ct. at 2182 (citation omitted) By analogy, this court finds persuasive the Sixth Circuit's opinion in *Serras,* in which:

> the "plaintiffs rel[ied] not only on an alleged telephone calls but also on an allegation that the defendant actually travelled to [the forum state] to solicit business, and actually made fraudulent representations while in [the forum state]." *These allegations alone were sufficient to support jurisdiction; therefore, a 12(b)(2) dismissal was improper....*

*Market/Media Research, Inc.,* 951 F.2d at 106 (quoting *Serras,* 875 F.2d at 1217) By freely entering into the interstate business relationship with the plaintiffs, the defendants have obtained the protection of Ohio law. They may not now escape Ohio sanction for the consequences of their activities arising from that relationship.

It is equally clear, as noted above, that the cause of action arises from the defendant's activities here. This second criteria of *Southern Machine* does not ask whether the plaintiff's action formally arises from the defendant's contacts with the forum. *See also Helicopteros,* 466 U.S. at 427, 104 S.Ct. at 1878–79. Rather, this requirement asks only "that the cause of action, of whatever type, have a *substantial connection* with the defendant's in state activities." *Southern Machine,* 401 F.2d at 384 n. 27. As the Sixth Circuit has noted on more than one occasion:

> [o]nly when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact].

*Third National Bank in Nashville v. WEDGE Group Inc.,* 882 F.2d at 1091 (quoting *Southern Machine,* 401 F.2d at 384 n. 29). *See also Lanier v. American Bd. of Endodontics,* 843 F.2d 901, 908–909 (6th Cir. 1988), *cert. denied,* 488 U.S. 926, 109 S.Ct.

310, 102 L.Ed.2d 329 (1988) (in discrimination suit, rejecting defendant's contention that because discriminatory decision was made outside forum state, the cause of action did not arise from defendant's in state activities; held: "arising out of" requirement satisfied if the cause of action was "made possible by" or "lies in the wake of" the defendant's state contacts) The defendant here negotiated its relationship in Ohio, with Ohio residents, and repeatedly communicated to Ohio to continue its negotiations and relationship. The defendant is now being sued for its alleged failure to fulfill its end of the bargain. Surely, this action has a "substantial connection with" and is "related to" defendants' contacts with Ohio.

Thus, we turn to the final element of the *Southern Machine* test, whether the exercise of jurisdiction over defendants would be reasonable. 401 F.2d at 381. *See also Asahi Metal Industry Co., Ltd.,* 480 U.S. at 108, 113, 107 S.Ct. at 1030, 1032–33. This final requirement involves:

> a determination of whether [the forum state] has an interest in resolving the conflict at issue; but once the first two questions have been answered affirmatively, resolution of the third involves merely ferreting out the unusual cases where that interest cannot be found.

*Southern Machine,* 401 F.2d at 384. Restated, "when the first two elements are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *Third National Bank in Nashville,* 882 F.2d at 1092 (quoting *First National Bank v. J.W. Brewer Tire Co.,* 680 F.2d 1123, 1126 (6th Cir.1982)). The Supreme Court has expounded upon this notion as follows:

> [W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

*Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184–85. Clearly, Ohio has an interest in this litigation, not the least of which is to provide a forum for the adjudication of a

dispute between residents and non-residents that have purposefully availed themselves of acting and causing consequences in Ohio. While the defendants have presented evidence suggesting that Ohio may well be an inconvenient forum, it has nowhere presented a "compelling case" that an Ohio forum is "so gravely difficult and inconvenient" that the exercise of *in personam* jurisdiction is *constitutionally* unreasonable. *Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185 (quoting *Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 18, 92 S.Ct. 1907, 1917–18, 32 L.Ed.2d 513 (1972)).

As the Supreme Court noted in *Burger King* a defendant's objections to the "reasonableness" of the exercise of jurisdiction may usually be ameliorated "through means short of finding jurisdiction unconstitutional." *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2185. The Court continued:

> For example, the potential clash of the forum's law with the "fundamental substantive social policies" of another State may be accommodated through application of the forum's choice of law rules. Similarly, *a defendant claiming substantial inconvenience may seek a change of venue.*

*Id.* (emphasis added) (citing *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 307–331, 101 S.Ct. 633, 637–650, 66 L.Ed.2d 521 (1981) and 28 U.S.C. § 1404(a)). The defendants' contention that "the imposition of long-arm jurisdiction over the Defendants [is] unreasonable" is without merit. (Defendant's Motion, Docket # 4 at 12) As its brief suggests, the burdens this litigation imposes upon the defendants are more appropriately addressed in a "discussion of a change of venue." (*Id.*)

Because the three-part test of *Southern Machine* has been satisfied by the *prima facie* showing of the plaintiff, this court concludes that defendants are subject to the territorial jurisdiction of Ohio. Accordingly, the defendant's motion to dismiss for lack of personal jurisdiction is denied.

This conclusion, however, does not end our inquiry. The defendants have alleged that "[v]enue is not proper in this court", and that the instant matter should be transferred to the United States District Court for the District of Colorado. (Defendant's Motion, Docket # 4 at 13). It is to these contentions that we now turn.

■ Federal Rule of Civil Procedure 12(b)(3) provides, in pertinent part, as follows:

> **(b) How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (3) improper venue....

Fed.R.Civ.P. 12(b)(3). Although courts are sharply divided on the issue, in this Circuit, the weight of authority suggests that the burden of establishing appropriate venue, once properly challenged, rests with the plaintiff. *See, e.g., Besuner v. Faberge Inc.,* 379 F.Supp. 278, 280 (N.D.Ohio 1974) (Green, J.) ("it is incumbent upon plaintiff to support the laying of venue in this district."); *Garrett v. Ruth Originals Corp.,* 456 F.Supp. 376, 378 (S.D.Ohio 1978) (Kinneary, J.) ("the burden was therefore placed on the plaintiff...."); *See also Weller v. Cromwell Oil Co.,* 504 F.2d 927 (6th Cir.1974); *Fayette v. Volkswagen of America, Inc.,* 273 F.Supp. 323 (W.D.Tenn.1967); *Dixie Portland Flour Mills, Inc. v. Dixie Feed & Seed Co.,* 272 F.Supp. 826 (W.D.Tenn.1965), *aff'd,* 382 F.2d 830 (6th Cir.1967) (cited by commentators as standing for this proposition).[1] For the task at hand, however, this standard is marginally relevant.

■ As noted above, the instant matter was removed by the defendants from the Cuyahoga County Court of Common Pleas. Section 1441(a) of Title 28, United States

---

1. The commentators' opinions on this issue are as divided as the federal courts. *See* 1A—Pt2 James W. Moore et. al., Moore's Federal Practice ¶ 0.340[1.–4] (1993) ("[I]t is not too much to require one who would abate an action because of a privilege personal to himself to establish his privilege."); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1352 at 265 (1990) ("[I]t is plaintiff's obligation to institute his action in a permissible forum, both in terms of jurisdiction and venue.")

Code provides, in pertinent part, the following:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, *to the district court of the United States for the district and division embracing the place where such action is pending.*

28 U.S.C. § 1441(a) (emphasis added). The highlighted language constitutes the statutory venue provision applicable to removed civil actions. *Polizzi v. Cowles Magazines, Inc.,* 345 U.S. 663, 665, 73 S.Ct. 900, 902, 97 L.Ed. 1331 (1953) ("The venue of removed actions is governed by 28 U.S.C. § 1441(a). . . ."); *see, e.g., Hite v. Norwegian Caribbean Lines,* 551 F.Supp. 390, 393 (E.D.Mich.1982). As such, the general venue provision of § 1391, Title 28, United States Code, "has no application." *Polizzi,* 345 U.S. at 665, 73 S.Ct. at 902. It is, therefore:

immaterial that this forum would obviously have been an improper venue had this action been brought here originally.

*Hartford Fire Ins. Co. v. Westinghouse Elec. Corp.,* 725 F.Supp. 317, 320 (S.D.Miss.1989). By their voluntary application for removal, the defendants have sanctioned the propriety of venue in this district and division. *Seaboard Rice Milling Co. v. Chicago, Rock Island & Pacific R.R. Co.,* 270 U.S. 363, 366, 46 S.Ct. 247, 248, 70 L.Ed. 633, 635 (1926). This conclusion, of course, has great impact upon plaintiff's requested relief.

 This court certainly may not dismiss for improper venue. *See Polizzi v. Cowles Magazines, Inc.,* 345 U.S. 663, 73 S.Ct. 900, 97 L.Ed. 1331 (1953). It is equally clear that the dismissal or transfer provisions of 28 U.S.C. § 1406(a) are inapplicable. Section 1406(a) provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a) As its language suggests, the fundamental prerequisite for this statute's utilization is the impropriety of venue in the transferring or dismissing court. Since that situation is clearly not present here, Section 1406(a) is inapplicable.

We thus turn to the final grounds for action urged by defendants, Section 1404.[2] That section provides, in pertinent part, the following:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The use of this statutory provision is proper when, as here, venue is proper in the original forum and that forum has subject matter jurisdiction. *See Van Dusen v. Barrack,* 376 U.S. 612, 634, 84 S.Ct. 805, 818, 11 L.Ed.2d 945 (1964); *Viaggio v. Field,* 177 F.Supp. 643 (D.Md.1959); 16 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3844 (1986). This statute permits transfer of an action to a district "where it might have been brought," a court which enjoys proper venue, subject matter and territorial jurisdiction. *See Hoffman v. Blaski,* 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). These conditions apply regardless of a defendant's wishes or willingness to consent to a forum lacking proper venue or territorial jurisdiction. *Id.* It seems apparent, and the plaintiffs have not otherwise suggested, that the

---

**2.** Although defendants speak, at times, in terms of *forum non conveniens,* the court presumes this to be an unartful use of a synonym for Section 1404 transfer. As noted in the Supreme Court "Congress enacted § 1404(a) to permit change of venue between federal courts." Indeed, it is indisputable that Section 1404(a) is more favorable to litigants than the common law doctrine of *forum non conveniens,* which is now applicable "only when the more convenient forum is in a foreign country—or perhaps, under rare circum-

stances, in a state court or territorial court. . . ." 15 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3828 at 279–80 (1986). *See, e.g., Cowan v. Ford Motor Co.,* 713 F.2d 100, 103 (5th Cir.1983) ("Section 1404(a) superseded the common law doctrine of forum non conveniens insofar as transfer to another federal district court is possible . . . the doctrine of *forum non conveniens,* as set out in *Gilbert,* remains good law so long as the possible alternative forum is a state or foreign court.")

District Court in Colorado, the proffered transferee court, is a district where this action "might have been brought". 28 U.S.C. § 1404(a).

■ While the venue transfer provisions of Section 1404(a) were "drafted in accordance with the doctrine of *forum non conveniens*", there is no doubt that Section 1404(a) is more liberal in its operation. Reviser's Note, 28 U.S.C. § 1404(a); *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955):

> When Congress adopted § 1404(a) it intended to do more than just codify the existing law of forum non conveniens ... When the harshest part of the doctrine is excised by statute, it can hardly be called mere codification. As a consequence, we believe that Congress ... intended to permit courts to grant transfers upon a lesser showing of inconvenience.... [T]he discretion to be exercised is broader.

*See also Gdovin v. Catawba Rental Co.,* 596 F.Supp. 1325, 1326 n. 1 (N.D.Ohio 1984) (Battisti, J.).

In considering a motion to transfer under Section 1404(a), the Sixth Circuit has stated that:

> a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of "interests of justice".

*Moses v. Business Card Express, Inc.,* 929 F.2d 1131, 1137 (6th Cir.1991), *cert. denied,* 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991).

■ Among the specific private interests a court may consider are plaintiff's choice of forum, the location of books and records and, as noted above, the convenience of witnesses. It has been said that plaintiff's choice of forum is entitled to "great weight". *Gdovin,* 596 F.Supp. at 1327. *See also West American Ins. Co. v. Potts,* 908 F.2d 974, 1990 WL

104034, at *2, 1990 U.S.App. LEXIS 12513, *5 (6th Cir.1990) (unpublished opinion) ("Foremost consideration must be given to the plaintiff's choice of forum.") It has also been said that "the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C.A. § 1404(a) is the convenience of witnesses." 15 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3851 at 415 (1986). What is clear, at least in this Circuit, is that for a court to properly grant transfer the balance of all relevant factors must weight "strongly in favor of transfer." *West American Ins. Co.,* 1990 WL 104034, at *2, 1990 U.S.App. LEXIS 12513 at *5 (quoting *Nicol v. Koscinski,* 188 F.2d 537 (6th Cir.1951)).

■ Citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)[3], the defendants submit the following as proof that venue would be more appropriate in Colorado:

1. Relative ease of access to sources of proof

> Ohio: Sources of proof inaccessible.

> Colorado: All sources of proof are located in Colorado, except for plaintiffs.

2. Availability of compulsory process for attendance of unwilling witnesses and the costs of obtaining those witnesses.

> Ohio: All non-party witness (sic) are outside Ohio and are outside the subpoena power of Ohio courts. High cost of obtaining attendance of willing Colorado witness for Ohio proceedings.

> Colorado: Non-party witnesses reside in Colorado and are subject to the subpoena power of Colorado courts. Relatively low cost of obtaining attendance of willing witness.

3. Possibility of jury view, if appropriate.

> Ohio: The race car and all other tangible evidence is located outside of Ohio.

> Colorado: All tangible evidence is located in Colorado.

---

**3.** *Gulf Oil* is, of course, a *forum non conveniens* case, decided one year before § 1404(a) was adopted. That opinion has, nevertheless, provided guidance on questions of Section 1404(a)

transfer. *See, e.g., Int'l Show Car Assoc. v. American Society of Composers, Authors & Publishers,* 806 F.Supp. 1308, 1310 (E.D.Mich.1992).

4. Any other practical problems that make the trial easy, expeditious and inexpensive.

> Ohio: Every aspect of litigating this case in Ohio would be difficult and expensive for the Defendants.
>
> Colorado: All sources of proof are in Colorado.

5. Questions as to the enforceability of a judgment.

> Ohio: Any judgment rendered by a court which lacks personal jurisdiction is violative of due process and is subject to collateral attack.
>
> Colorado: No issue of personal jurisdiction would arise in Colorado.

(Defendants' Motion, Docket # 4 at 15–16) In response, plaintiffs contend that defendants have:

> demonstrated nothing other than their own personal convenience which favors this controversy being resolved in Colorado. Harris, the Peeks and Safety & Performance Systems, Inc. have argued that more witnesses or evidence can be found in Colorado than in Ohio. Plaintiffs do not agree, but even if that were the case, it would be insufficient.

(Plaintiffs' Response, Docket # 6 at 14) For instance, plaintiffs contend that the witness factor does not weigh strongly in defendant's favor because "plaintiffs face the same problem of having their Ohio witnesses, who plaintiffs anticipate would be representatives of Mr. Gasket and Callie's Performance, Inc. to travel to Colorado." (*Id.* at 15–16). On the basis of these submissions, the court believes transfer is unwarranted. Simply put, defendants have not fulfilled their burden.

Here, defendants argue not for the convenience of "the parties", but for the convenience of the defendant. Of course, this same inconvenience, as noted above, would afflict plaintiffs were this case transferred to the District Court in Colorado. The venue transfer provisions of Section 1404(a) is not meant to merely shift the inconvenience to the plaintiff. *See Van Dusen v. Barrack,* 376 U.S. at 645–46, 84 S.Ct. at 824 ("Section 1404(a) provides for transfer to a more con-

venient forum, not a forum likely to prove equally convenient or inconvenient."); *Raymond E. Danto, Associates, Inc. v. Arthur D. Little, Inc.,* 316 F.Supp. 1350, 1358 (E.D.Mich.1970) ("[When] a transfer from a Michigan court to a Massachusetts court would merely shift the inconvenience of proceeding in this action from the defendant to the plaintiff ... plaintiff's choice of forum must prevail.")

The defendants also contend that transfer should be granted for the convenience of the witnesses. Even if one ignores the plaintiff's representation that its witnesses would be equally inconvenienced by transfer, there is authority within this Circuit which clearly suggests that defendants' showing is insufficient to warrant transfer. *See Lake v. Richardson–Merrell, Inc.,* 538 F.Supp. 262, 271 (N.D.Ohio 1982) (Battisti, J.):

> the defendant has only submitted a list of possibly relevant witnesses outside this district and a few cursory excerpts of what some them might show.
>
> . . . . .
>
> The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover. The emphasis must be on the showing rather than on the numbers. One key witness may outweigh a great number of less important witnesses. If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be the application for transfer will be denied.

(quoting 15 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 at 270–71 (1976)). In the case at bar, defendants have failed to properly identify the third-party witnesses and the substance of their testimony. A similar deficiency is found in plaintiff argument regarding sources of proof.

The defendants contend that "all the documents and records ... are located in Colorado." (Harris Aff. at ¶ 20) In response, the plaintiffs have noted that "since admittedly there is no written contract and what documentary evidence the plaintiffs have (for instance, invoices and canceled checks) are in

Ohio, and the defendants' documentary evidence is in Colorado ... there is no greater burden on the defendants to bring their documentary evidence to Ohio." (Defendant's Response, Docket # 6 at 15) Again, even if one ignores the plaintiffs' quite logical contention, one must conclude that defendants' showing is deficient. It is widely held that while the location of books and records is a factor to be considered, the movant's showing, as is the case with the availability of third-party witnesses, must exceed "general allegations that transfer is needed because of such documents." *Crawford & Co. v. Temple Drilling Co.*, 655 F.Supp. 279, 281 (M.D.La. 1987).

The plaintiffs have chosen Ohio as their forum, a decision deserving "foremost consideration." *West American Ins. Co. v. Potts*, 908 F.2d 974, 1990 WL 104034, at *2, 1990 U.S.App. LEXIS 12513, *5 (6th Cir.1990). Even were the defendants' showings of inconvenience sufficient for consideration, an acceptance of their reasoning would not weigh "strongly in favor of transfer". *Id.* In light of this conclusion, the defendants' motion to transfer venue is denied.

### IV. CONCLUSION

The defendants have questioned the existence of personal jurisdiction over them and the propriety of venue in this court. Consideration of their law and argument, however, reveals this reasoning to be without merit. The plaintiffs have unquestionably made a *prima facie* showing sufficient to conclude that personal jurisdiction exists at this juncture. The question of venue is equally apparent. It is well settled that the venue of this removed action properly rests in this district and this division. In order to warrant transfer, the defendants must make articulate conditions strongly favoring the trial of this matter in Colorado. This, they simply have not done.

Accordingly, the defendants' motion to dismiss or alternative motion to transfer venue, Docket #4, is and must be DENIED.

IT IS SO ORDERED.