**SUAREZ CORPORATION INDUSTRIES,**
Plaintiff,

v.

**Darrell V. McGRAW, Jr., et al., Defendants.**

No. 5:99–CV–0324.

United States District Court, N.D. Ohio, Eastern Division.

Sept. 29, 1999.

·Frances Floriano Goins, Laura J. Roman, Squire, Sanders & Dempsey, Cleveland, OH, Roy Gutierrez, Gutierrez & Mackey, Canton, OH, Craig Wright, Chester, Willcox & Saxbe, Columbus, OH, J. Thomas Burch, Jr., Maloney & Burch, Washington, DC, W.B. Markovits, Cincinnati, OH, William T. Bennett, Burch & Cronauer, Washington, DC, for Suarez Corp. Industries, plaintiff.

Stephen J. Pruneski, Valoria C. Hoover, Roderick, Myers & Linton, Akron, OH, Rudolph L. DiTrapano, Sean P. McGinley, DiTrapano, Barrett & DiPiero, Charleston, WV, Rebecca A. Baitty, Sarasota, FL, for Darrell V McGraw, Jr., Tom Rodd and John Does 1–10, defendants.

## ORDER

GWIN, District Judge.

On February 19, 1999, Defendants Darrell McGraw and Tom Rodd filed a motion to dismiss this case arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*

## I. FACTUAL BACKGROUND

Defendants seek dismissal of Plaintiff SCI's RICO complaint. In the complaint, SCI claims both defendants violated RICO through predicate acts of mail and wire fraud, extortion, and obstruction of justice.

Plaintiff SCI is an Ohio corporation with its principal place of business located in Canton, Ohio. SCI engages in direct marketing, doing business nationally through mail, newspapers and magazine advertising, the Internet, and retail stores.

Defendant Darrell McGraw serves as the Attorney General of West Virginia since 1993. Defendant Tom Rodd was a Senior Assistant Attorney General at all times pertinent to this action.

The parties herein have been involved in a series of lawsuits in West Virginia and Ohio from 1994 until the present. In January 1994, the state of West Virginia,

through Attorney General McGraw, filed suit against SCI alleging violations of West Virginia's Consumer Credit and Protection Act. Thereafter, Plaintiff SCI or its President, Benjamin Suarez, filed at least four actions against Defendant McGraw in West Virginia federal courts and one in an Ohio state court. These suits sought relief related to the Attorney General's actions against SCI.

On September 29, 1998, Plaintiff SCI filed a complaint in the Stark County Court of Common Pleas.[1] In its complaint, Plaintiff alleges that the West Virginia Attorney General's office and its associated personnel are an enterprise for RICO purposes. SCI says the defendants acted or conspired to act to injure Plaintiff SCI through wire and mail fraud, extortion, and obstruction of justice activities. Plaintiff SCI alleges the defendants acted in their personal capacity and under color of official right in so acting.

Specifically, Plaintiff SCI alleges that through phone and fax communications, the defendants effected revocation of SCI's membership in the Better Business Bureau of Canton, Ohio ("Canton BBB"), of which SCI was a member. In 1994, the Better Business Bureau was attempting to expand into certain West Virginia counties. SCI says the defendants' threatened the Canton BBB by saying it would not help the organization expand in West Virginia as long as SCI remained a member.

Between approximately September 1994 and February 1995, the Attorney General's office and the Canton BBB made contact at least twenty-two times. The Canton BBB revoked SCI's membership in February 1995. Plaintiff SCI claims the defendants extorted Plaintiff through communications with the Canton BBB.

In October 1994, Defendant McGraw sent two letters to Ohio's Attorney General that contained allegedly defamatory infor-

---

1. Case No.1999 CVO 00047.

mation regarding SCI. SCI says the letters constitute mail or wire fraud.

In October 1996, McGraw sent a letter to more than forty West Virginia legislators. In the letter, McGraw insinuated that SCI had connections to organized crime. SCI claims this, too, was an incident of mail or wire fraud.

Finally, Plaintiff SCI alleges Defendants McGraw and Rodd obstructed justice in litigation to which SCI was not a party. However, SCI says defendants' goal was to injure SCI and that they acted to further that goal.

Plaintiff SCI claims defendants' conduct amounts to a pattern of racketeering activity prohibited under RICO. SCI says the racketeering activity resulted in SCI's loss of business, loss of membership in the Better Business Bureau of Canton, Ohio ("Canton BBB"), and damage to SCI's reputation.

On February 11, 1999, Defendants filed a notice of removal citing this Court's original jurisdiction over Plaintiff's RICO claims pursuant to 28 U.S.C. § 1331 and § 1441.

On February 19, 1999, Defendants McGraw and Rodd filed the instant motion to dismiss. Defendants' challenge this Court's subject matter and personal jurisdiction, as well as venue.[2] For the reasons that follow, this Court finds that it has both subject matter jurisdiction and personal jurisdiction over this action. The Court also finds that defendants have waived their challenge to venue in this district.

## II. ANALYSIS

### A. Subject Matter Jurisdiction

Defendants McGraw and Rodd argue this Court lacks subject matter jurisdiction over this case under Fed.R.Civ.P. 12(b)(1).

A court properly grants a motion to dismiss only if it appears that the plaintiff can prove no set of facts that would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The complaint is construed in the light most favorable to the plaintiff and the court accepts as true all of the plaintiff's well-pled factual allegations.

Applying these standards, the Court determines it has subject matter jurisdiction over this action.

Defendants McGraw and Rodd challenge this Court's jurisdiction under the Eleventh Amendment. Immunity under the Eleventh Amendment restricts judicial power under Article III. Consequently, the Court lacks jurisdiction to hear cases involving such immunity. *Wilson–Jones v. Caviness,* 99 F.3d 203, 206 (6th Cir.1996).

Under the Eleventh Amendment, a state, its officials, and its employees may be sued in federal court only when the state has consented to suit. *Seminole Tribe v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Puerto Rico Aqueduct and Sewer Authority v. Metcalf and Eddy, Inc.,* 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 98–99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). This doctrine applies to a suit in which a party sues state officials or employees for money damages regarding their official actions, because a judgment would be satisfied from the state's treasury and, therefore, the state itself is the real party in interest. *See Doe v. Wigginton,* 21 F.3d 733, 736–37 (6th Cir.1994). Thus, a lawsuit challenging official action taken by state officials or employees and seeking money damages is barred by the Eleventh Amendment. *See*

2. The Court notes that the motion as pleaded is limited to Rules 12(b)(1), (2), and (3). Plaintiff SCI raises the specter of a motion to dismiss for failure to state a claim in its Response. Defendants address plaintiff's arguments in their Reply. However, there is no motion to dismiss on record. Therefore the Court does not address the parties' arguments regarding Rule 12(b)(6).

*O'Hara v. Wigginton,* 24 F.3d 823, 826 (6th Cir.1994).

■■■ Conversely, a lawsuit against a state actor in his individual capacity is not barred by the Eleventh Amendment. *Mackey v. Cleveland State University,* 837 F.Supp. 1396, 1404 (N.D.Ohio 1993). As the U.S. Supreme Court recently reiterated, "a suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally." *Alden v. Maine,* —— U.S. ——, 119 S.Ct. 2240, 2267–68, 144 L.Ed.2d 636 (citing *Scheuer v. Rhodes,* 416 U.S. 232, 237–238, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). This principle applies to suits for either damages or injunctive relief. *Mackey,* 837 F.Supp. at 1404.

■■■ Plaintiff SCI indicates throughout its complaint that it is suing both Defendants McGraw and Rodd for acting "outside the scope of their duties," for venturing "well beyond the bounds of legitimate enforcement measures," and for acting to further their personal advantage. The Court finds the complaint sufficiently alleges claims against defendants in their personal capacity. Therefore, the Eleventh Amendment does not bar Plaintiff SCI's claims.

### B. Personal Jurisdiction

Defendants McGraw and Rodd contend they did not have sufficient contacts with Ohio giving rise to personal jurisdiction. Upon review, the Court concludes Defendant McGraw had sufficient contacts with Ohio. Further, the Court determines that Defendant Rodd is subject to personal jurisdiction of this court under RICO's nationwide service of process provision. The Court therefore denies defendants' Rule 12(b)(2) motion.

■■■ As the party asserting jurisdiction, Plaintiff SCI bears the burden of showing that personal jurisdiction exists. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1261–62 (6th Cir.1996); *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991). Generally a plaintiff must prove jurisdiction by a preponderance of the evidence. *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir.1998). The Court notes that a district court ruling on a Rule 12(b)(2) motion without conducting an evidentiary hearing must consider the pleadings and affidavits in a light most favorable to the plaintiff. *Id.* (quoting *CompuServe,* 89 F.3d at 1262). In such circumstances, and in "sharp contrast" to summary judgment procedure, the court does not weigh the controverting assertions of the party seeking dismissal. *Id.; Nationwide Mutual,* 91 F.3d at 792–93. The plaintiff can defeat a motion to dismiss for lack of personal jurisdiction by making a *prima facie* showing of jurisdiction. *Dean,* 134 F.3d at 1272.

In this case, the Court has held no evidentiary hearing. Therefore, Plaintiff SCI need make only a prima facie showing of personal jurisdiction.[3]

■■■ A valid assertion of personal jurisdiction must satisfy both the state's long-arm statute and constitutional due process concerns. *Nationwide Mutual Ins. Co. v.*

---

**3.** The Court notes that this lower, "prima facie" standard would not apply in a case in which no real dispute about jurisdictional facts exists. *Dean,* 134 F.3d at 1272. In *Dean,* the Sixth Circuit noted that if there is no factual dispute, it would be a waste of resources to conduct an evidentiary hearing. In such circumstances, it would be unfair to prejudice defendants by extending a lower burden of proof to the plaintiff. *Id.* Thus, where there is no factual dispute and there-fore no hearing, "plaintiffs face the same burden as they would if there had been an evidentiary hearing: proof of jurisdiction by a preponderance of the evidence." *Id.*

However, in this case, Defendants contend McGraw never communicated with the Canton Better Business Bureau. Thus, a factual dispute exists and the absence of an evidentiary hearing requires Plaintiff SCI to meet only the lower, "prima facie" standard.

*Tryg Int'l Ins. Co., Ltd.,* 91 F.3d 790, 794 (6th Cir.1996). Because Ohio's long-arm statute extends to the constitutional limits of the Due Process Clause, the two inquiries merge and the Court need only determine whether the assertion of personal jurisdiction over McGraw and Rodd violates constitutional due process. *Id.* at 793 (citing *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1167 (6th Cir.1988); *Third Nat'l Bank v. WEDGE Group Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989)).

■ In considering the due process element of personal jurisdiction, courts distinguish between "general" and "specific" jurisdiction. *Reynolds v. International Amateur Athletic Fed'n,* 23 F.3d 1110, 1116 (6th Cir.1994). For general jurisdiction, if a party's contacts with the forum state are "continuous and systematic," then the state may exercise personal jurisdiction over the party even if the action is unrelated to that party's contacts with the state. *Id.* Plaintiff SCI does not base its arguments on general jurisdiction and the Court finds no facts supporting such an argument.

Rather, Plaintiff contends that Defendants McGraw and Rodd's contacts with Ohio, while limited, were directed at SCI and resulted in injury to it. Plaintiff SCI's assertions therefore implicate "specific" jurisdiction.

■ A court may exercise specific jurisdiction over a party if the lawsuit arose out of or is related to the party's contacts with the state. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Due process requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). This "fair warning" requirement is satisfied when the defendant "purposefully directs" his activities at residents of the forum and the litigation

results from alleged injuries that "arise out of or relate to" those activities. *Id.* (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)); *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868.

■ Specific jurisdiction often may be premised on a single act of the defendant. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The nature and quality of the act, as well as the circumstances surrounding its commission, must be examined to determine whether personal jurisdiction exists in each case. *International Shoe Co. v. Washington,* 326 U.S. 310, 318, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In all questions of personal jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp.,* 471 U.S. at 474, 105 S.Ct. 2174 (citation omitted).

The Sixth Circuit has devised a three-part test for determining the "outer limits of *in personam* jurisdiction based on a single act":

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1263 (6th Cir.1996) (citations omitted); *see also Southern Mach. Co. v. Mohasco Indus.,* 401 F.2d 374, 381 (6th Cir. 1968) (adopting the above test).

■ With these guidelines in mind, the Court must also note that the crucial federal constitutional inquiry is whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state that the district court's exer-

cise of jurisdiction would comport with "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. 310 at 316, 66 S.Ct. 154, 90 L.Ed. 95.

■ With regard to Defendant McGraw, Plaintiff SCI contends that McGraw participated in several acts within or directed at Ohio. First, plaintiff alleges McGraw faxed a letter to Ohio's Attorney General falsely claiming that the U.S. Postal Service had sued SCI for mail fraud. Second, SCI alleges McGraw sent another fax to the same office falsely claiming that SCI's personnel had a "proclivity to violence."

SCI also alleges Defendant McGraw mailed a letter to 43 West Virginia legislators, warning them that SCI had targeted them for a corrupt lobbying endeavor to expand gambling rights in West Virginia. In this letter, McGraw explained his belief that SCI, through its "principals, agents, subsidiaries, sympathizers, fellow travelers, henchmen, and hirelings," was conducting multifaceted campaign activity on behalf of organized gambling in West Virginia.

Finally, SCI points to at least twenty-two phone or fax communications between the Canton BBB's office and the West Virginia Attorney General's office between late August 1994 and mid-February 1995. During this period, the Canton BBB was reviewing SCI's membership status, which it ultimately revoked on February 16, 1995.

Plaintiff SCI says McGraw's letters injured SCI and that the phone calls as a whole led to SCI's losing its membership in the Canton BBB. SCI says McGraw, as Attorney General, is responsible for the communications between the Attorney General's office and the Canton BBB.[4] SCI claims these contacts harmed its business and reputation interests.

Plaintiff SCI contends that McGraw could reasonably expect all of these communications to cause harm to SCI's business, located in Ohio. Upon review, the Court agrees. The communications as alleged involve Defendant McGraw discrediting SCI. Each of the several contacts is related to plaintiff's cause of action before this Court. In light of the extensive and protracted litigation involving the parties in West Virginia courts, the Court finds that Defendant McGraw's activities targeting the Ohio business could reasonably be expected to cause injury in this state. Under the circumstances, the Court finds due process considerations of "fair play and substantial justice" to be met. *Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir.1996) (quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal citation omitted)).

Plaintiff SCI also contends that Defendant Rodd threatened to cause the company "pain, damage and injury" if it did not cease its operations in West Virginia. Rodd apparently made the demand to shut down operations as part of a negotiation process related to other litigation between the parties.

SCI also says that Rodd, under the direction of Defendant McGraw, engaged in numerous phone conversations with the Better Business Bureau in Canton, Ohio ("Canton BBB"). Plaintiff alleges at least one of these conversations included Defendant Rodd's threat that the West Virginia Attorney General's office would not help the Canton BBB expand its presence in

---

**4.** Even if Defendant McGraw did not make the phone calls into Ohio, Ohio's long-arm statute allows a court to exercise personal jurisdiction "over a person who acts … by an agent, as to a cause of action arising from the person's: … (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state." Ohio Rev.Code § 2307.382(A)(6). There is little question that Defendant McGraw had actual or apparent authority over personnel within the Attorney General's office.

West Virginia if SCI remained a member. Plaintiff claims the phone conversations as a whole caused the Canton BBB to revoke SCI's membership in February 1995.

Beyond the allegation of the two threats, there is no indication in the complaint, RICO case statement, and accompanying materials that connect Defendant Rodd to the Canton BBB's decision to revoke SCI's membership. Of the twenty-two communications reflected on a list provided by SCI, only one is specifically attributed to Rodd.[5] He contacted the Canton BBB on February 17, 1995, the day after the Canton BBB revoked SCI's membership. All other communications on the list are attributed to the Attorney General's office generally. Therefore, there is no factual allegation supporting a causal relationship between Rodd's phone call and SCI's loss of membership.

■ The Court finds that the existence of personal jurisdiction over Defendant Rodd is a close question. However, even if the evidence is insufficient to support jurisdiction under traditional jurisdictional analysis, personal jurisdiction arises under RICO's nationwide service of process provision. The statute reads, in pertinent part:

> In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that *other parties residing in any other district* be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served

in any judicial district of the United States by the marshal thereof.

18 U.S.C. § 1965(b) (emphasis added). This provision authorizes service of process regardless of the defendants' contacts with the forum state.

■ The Federal Rules of Civil Procedure provide that valid service of process "is effective to establish personal jurisdiction over the person of a defendant when authorized by a statute of the United States." Fed.R.Civ.P. 4(k)(1)(D). Therefore, when a federal statute provides for nationwide service of process, it becomes a statutory basis for personal jurisdiction. *Haile v. Henderson National Bank,* 657 F.2d 816, 824 (6th Cir.1981); *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 626 (4th Cir.1997); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 942 (11th Cir.1997); *Hogue v. Milodon Eng'g Inc.,* 736 F.2d 989, 991 (4th Cir.1984).

■ Defendant Rodd has been validly served in his state of residence, West Virginia. Therefore, personal jurisdiction is established, subject only to due process limitations under the Fifth Amendment.[6] *ESAB Group,* 126 F.3d at 627; *Republic of Panama,* 119 F.3d at 942; *Hogue,* 736 F.2d at 991.

■ Thus, RICO permits a broader interpretation of personal jurisdiction than applies in a traditional jurisdictional analysis. This broader jurisdiction is measured by national contacts rather than the traditional test examining minimum contacts with the forum state. *See, Go–Video, Inc. v. Akai Elec. Co. Ltd.,* 885 F.2d 1406 (9th

---

**5.** As noted in Footnote 5, *supra,* though Defendant McGraw might be held responsible as a principal for communications coming from his office, that does not mean that every communication is equally attributable to every agent in that office. Thus, the Court requires more specific factual allegations with regard to Defendant Rodd's involvement than for Defendant McGraw.

**6.** The Court notes that in *Haile,* the Sixth Circuit found that a statute's provision of nationwide service of process removed the re-

quirement of *International Shoe*'s "minimum contacts" test from jurisdictional analysis. *Haile,* 657 F.2d at 824. The due process at issue in *International Shoe* was grounded in the Fourteenth Amendment. Modern courts find that in cases where a federal statute provides nationwide service of process, due process concerns still arise, but under the Fifth Amendment rather than the Fourteenth. See, e.g., *ESAB Group,* 126 F.3d at 627; *Republic of Panama,* 119 F.3d at 942.

Cir.1989) (finding national contacts analysis appropriate).

To overcome Defendant Rodd's Rule 12(b)(2) motion, Plaintiff SCI need only show that the defendant "maintained minimum contacts with the United States as a whole, rather than any particular state, for a federal court to exercise jurisdiction consistent with the due process clause." *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.* 23 F.Supp.2d 796, 803 (N.D.Ohio 1998) (citing *Obee v. Teleshare, Inc.* 725 F.Supp. 913, 915 (E.D.Mich. 1989)); *see also A + Network, Inc. v. Shapiro,* 960 F.Supp. 123 (D.C.Tenn.1997) (stating when service of process can be served nationally, the question becomes whether the party has sufficient contacts with the United States).

■ Defendant Rodd, as a resident of West Virginia, has sufficient minimum national contacts. Further, the Court sees no "extreme inconvenience or unfairness as would outweigh the congressionally articulated policy of allowing the assertion of *in personam* jurisdiction" in Ohio. *ESAB Group,* 126 F.3d at 627 (citing 4 CHARLES A. WRIGHT & ARTHUR R. MILLER § 1067.1, at 331 (1987) ("[C]ongressional policy choice that includes nationwide service of process 'should be afforded substantial weight.' ")).

Some courts have found that even the broad authority granted by RICO has limits. The Ninth Circuit and, more recently, the Second Circuit have determined that Section 1965(b) does not automatically require national service of process merely because a defendant has been named in a RICO case, without regard to where the defendant resides. *See PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.,* 138 F.3d 65, 71 (2d Cir.1998); *Butcher's Union Local No. 498 v. SDC Invest., Inc.,* 788 F.2d 535, 539 (9th Cir.1986). Rather, these courts have found RICO service of

process appropriate when the court has personal jurisdiction over at least one of the defendants and when the "ends of justice" require service over other, nonresident defendants. *PT United Can Co.,* 138 F.3d at 71–72; *Butcher's Union,* 788 F.2d at 539.[7]

This Court has previously found that in determining when the "ends of justice" require national service, "courts are to consider the legislative history of RICO." *Iron Workers,* 23 F.Supp.2d at 803. Congress "intended the 'ends of justice' language to provide a means for 'plaintiffs to bring all members of a nationwide RICO conspiracy before the court in a single trial.'" *Id.* (citation omitted) (quoting *La-Salle National Bank v. Arroyo Office Plaza, Ltd.,* No. 87–C–463, 1988 WL 23824, *2 (N.D.Ill. Mar.10, 1988)).

■ In this case, even if the "ends of justice" language places a limit on jurisdiction different from that provided under due process analysis, the Court finds it appropriate to assert personal jurisdiction in this case. Plaintiff SCI has brought claims not only for violation of RICO but also for conspiracy to violate RICO provisions. 18 U.S.C. § 1962(d). It would not serve the ends of justice to require separate trials in different fora against parties who work in the same department and who both have close involvement in the events underlying the plaintiff's case, including previous litigation between the parties.

The Court acknowledges the inconvenience to Defendants McGraw and Rodd in defending this action in an Ohio federal court. However, the burden is on the defendants to show that asserting jurisdiction in this forum will make litigation "so gravely difficult and inconvenient" that they are unfairly at a "severe disadvantage" in comparison to SCI. *Burger King v. Rudzewicz,* 471 U.S. at 478, 105 S.Ct.

---

**7.** The Ninth Circuit would limit the "ends of justice" provision to cases in which a court has personal jurisdiction over at least one defendant and there is no other district in which a court would have personal jurisdiction over *all* alleged RICO co-conspirators. *Butcher's Union,* 788 F.2d at 539. The Second Circuit expressed no opinion on the issue, as it was not raised in that case. *PT United Can Co.,* 138 F.3d at 71 n. 5.

2174; *Republic of Panama,* 119 F.3d at 948.

Further, "[w]hen the defendant is located in the United States, he 'must look primarily to federal venue requirements for protection from onerous litigation,' because 'it is only in highly unusual cases that the inconvenience will rise to a level of constitutional concern.'" *ESAB Group,* 126 F.3d at 627 (citing *Hogue,* 736 F.2d at 991; *Republic of Panama,* 119 F.3d at 947).

■ In this case, Defendants McGraw and Rodd seek to dismiss for lack of venue. However, when defendants removed the action to this Court, they waived venue. *Seaboard Rice Milling Co. v. Chicago, R.I. & P. Ry. Co.,* 270 U.S. 363, 367, 46 S.Ct. 247, 70 L.Ed. 633 (1926); *Jeffrey Mining Products v. Left Fork Mining Co.,* 992 F.Supp. 937, 939 (N.D.Ohio 1997); *Bacik v. Peek,* 888 F.Supp. 1405, 1413 (N.D.Ohio 1993). Therefore, the Court denies the motion.

### III. CONCLUSION

For the above reasons, the Court finds that it has both subject matter and personal jurisdiction over Defendants McGraw and Rodd. The Court also finds defendants waived their challenge to venue in this district. The Court therefore denies defendants' motion to dismiss in all respects.

IT IS SO ORDERED.