**UNITED STATES of America,
Plaintiff,**

v.

**CINEMARK USA, INC., Defendant.**

No. 1:99CV0705.

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 31, 1999.

882

Phyllis M. Cohen, Edward Miller, Dept. of Justice, Disability Rights Section, Washington, DC, Bill Lann Lee, Dept. of Justice Civil Rights Div., Housing & Civil Enforcement Section, Washington, DC, Marlon A. Primes, Office of U.S. Atty., Cleveland, OH, for Plaintiff.

M. Brett Burns, Laura M. Franze, Akin, Gump, Strauss, Hauer & Feld, Dallas, TX, for Defendant.

## MEMORANDUM OPINION
## AND ORDER

NUGENT, District Judge.

This matter comes before the Court on Defendant Cinemark's Motion to Dismiss, Transfer, or Stay (Document # 5). For the reasons stated below, Defendant's Motion to Dismiss, Transfer, or Stay is DENIED.

### Factual and Procedural History

Plaintiff United States of America filed this civil action against Defendant Cinemark USA, Inc., alleging that Defendant has violated and continues to violate Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181–12189.

Defendant is an international corporation, headquartered in Texas, that constructs, owns, and operates multi-screen movie theater complexes. It is the fifth largest motion picture exhibitor in the United States with locations in 31 states and 9 foreign countries. In 1995, Defendant began constructing and operating "stadium-style" movie theaters. Defendant has stadium-style theaters throughout the United States, including Ohio, Mississippi, Utah, Texas, Georgia, and Louisiana.

Stadium-style theaters imitate the seating at a sports stadium, with some or all of the seating placed on steeply-tiered stairs that are approximately 16 inches in height. By contrast, traditional-style seating is placed on a sloped floor. Moviegoers in stadium-style seats have superior sight lines that are virtually unobstructed by people sitting directly in front of them.

The parties agree that Defendant's theater complexes are subject to the requirements of Title III of the ADA. However, as Defendant concedes, wheelchair users are denied access to the stadium-style seats which are placed on steeply-tiered stairs. Instead, Defendant typically provides wheelchair locations on a flat portion of each theater, generally located at or about the third row of the theater and near the entrance.

In a letter dated January 28, 1998, Plaintiff notified Defendant that it had received complaints regarding Defendant's stadium-style movie theaters in Texas. Plaintiff requested information from Defendant in order to "fully evaluate the allegations raised in the complaints" and

"review Cinemark's overall compliance with the ADA." This information consisted of, *inter alia*, a list of all theaters owned, operated, or constructed by Defendant in the United States and a list of all locations for which Defendant is either building or planning to build a new theater in the United States.

On July 20, 1998, Plaintiff filed an *amicus curiae* brief in *Lara v. Cinemark USA*, EP–97–CA–502–H (W.D.Tex.), a lawsuit brought by individuals with disabilities and two advocacy groups alleging that Defendant violated the ADA. In its brief, Plaintiff urged the Court, in the words of Plaintiff, "to adopt the plain dictionary meaning of the word 'comparable' to the [ADA] regulation at issue"; in the words of Defendant, to adopt a "previously unarticulated 'interpretation' of" the regulation at issue. Defendant attempted to join the Department of Justice as a party to the *Lara* litigation, in order to assert Administrative Procedure Act (APA) counterclaims against the Department of Justice. The *Lara* court denied Defendant's joinder request, and thereafter granted partial summary judgment in favor of the *Lara* plaintiffs, ordering Defendant to retrofit 18 of its theaters. The *Lara* court issued its Amended Order on October 21, 1998. Defendant filed an appeal, which is still pending.

Meanwhile, as Plaintiff's investigation of Defendant's theaters continued, the parties held a settlement conference on December 2, 1998, in Washington, D.C. At this meeting, Plaintiff informed Defendant that it was authorized to file a complaint against Defendant for alleged ADA violations and that enforcement proceedings would commence if the matter could not be settled. In a settlement letter dated January 26, 1999, Plaintiff stated that it could not agree with Defendant's general proposal that provided for a fixed measurement of line of sight for wheelchair users. Plaintiff indicated, however, that plans for Defen-

dant's theater complex in Mississippi might be acceptable with "minor adjustments." Plaintiff asked whether Defendant was willing to make proposed design modifications and whether Defendant would alter its existing theaters.

Two days later, on January 28, 1999, Defendant filed a declaratory judgment action against the United States Department of Justice, Bill Lann Lee, and John L. Wodatch, in the Northern District of Texas. Defendant alleges, *inter alia*, that the Department of Justice violated the APA and the Constitution by promulgating and enforcing "a new rule of law" against Defendant.

In a letter dated February 1, 1999, Defendant informed Plaintiff that Plaintiff's settlement proposal was unacceptable. Plaintiff, by letter dated March 17, 1999, offered a "final opportunity" to resolve the matter, and noted that absent settlement, Plaintiff would file suit.

Thereafter, Plaintiff filed its Complaint with this Court on March 24, 1999. Defendant filed a Motion to Dismiss, Transfer, or Stay on June 3, 1999. Plaintiff filed an Opposition to Defendant's Motion on June 22, 1999, to which Defendant replied on July 1, 1999.

### Discussion

### I. Defendant's Argument for Dismissal

■ Defendant does not specify by which subsection under FED. R. CIV. P. 12 it moves for dismissal, merely stating that it moves for dismissal, transfer, or stay "in accordance with Federal Rule of Civil Procedure 12 and 28 U.S.C. § 1404(a) . . . ." Finding all other sections to be off-mark, the Court will construe Defendant's FED. R. CIV. P. 12 Motion as a motion under 12(b)(3) for improper venue. Defendant's FED. R. CIV. P. 12(b)(3) motion fails because, under 28 U.S.C. § 1391(b), venue is proper in the Northern District of Ohio; Defendant operates four stadium-style theater complexes in this district.[1]

---

1. The Court notes that other defenses, besides those numbered (1)-(6) "shall be asserted in the responsive pleading thereto . . . ." FED. R. CIV. P. 12(b). Usually, other defenses are asserted in a timely answer. However, responsive pleadings include answers, cross-claim answers, replies to counterclaims, and

Defendant does specify, however, that it wishes this Court to dismiss this matter because it filed a lawsuit against the Department of Justice, Bill Lann Lee, and John L. Wodatch, in the Northern District of Texas prior to the United States of America filing this suit against Defendant in the Northern District of Ohio. Defendant argues that these federal lawsuits are "two suits involving substantially the same parties and issues . . . ."

Defendant's argument implicates judicially self-imposed limitations on the exercise of federal jurisdiction. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (holding that principles of "wise judicial administration," which are "unrelated to considerations of proper constitutional adjudication," "govern in situations involving the contemporaneous exercise of concurrent jurisdictions . . . by federal courts"). The Supreme Court has stated that "[a]s between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation." *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236, *quoted in Smith v. Securities and Exch. Comm'n,* 129 F.3d 356, 361 (6th Cir.1997); *see also In re American Medical Systems,* 75 F.3d 1069, 1088 (6th Cir.1996).

Because there are mechanisms for raising questions of proper venue through FED. R. CIV. P. 12(b)(3), 28 U.S.C. § 1406(a), and the doctrine of *forum non conveniens,* as well as a mechanism for transfer via 28 U.S.C. § 1404(a), this Court considers self-imposed limitations on its jurisdiction with caution. *See Colorado River,* 424 U.S. at 818–19, 96 S.Ct. 1236 (Brennan, J.) (stating that the circumstances warranting dismissal are "exceptional" and cautioning that "a carefully considered judgment" with "[o]nly the clearest of justifications will warrant dismissal."); *Landis v. American Water Works & Elec. Co.,* 299 U.S. 248, 255, 57

S.Ct. 163, 81 L.Ed. 153 (1936) (Cardozo, J.) (holding that the litigant requesting a stay because of multiple litigation "must make out a clear case of hardship or inequality", but noting that these considerations "are counsels of moderation rather than limitations on power.").

When a federal court is presented with a duplicative suit, "it may exercise its discretion to stay the suit before it, to allow both suits to proceed, or, in some circumstances, to enjoin the parties from proceeding in the other suit." *Smith,* 129 F.3d at 361 (citing *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183–84, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). A duplicative suit is one that is "materially on all fours with the other" and has such an identity of issues "that a determination in one action leaves little or nothing to be determined in the other." *Smith,* 129 F.3d at 361 (quotes and citations omitted).

The case before this Court and Defendant's Texas lawsuit are not duplicative; rather, they are factually and legally distinct. In the Texas civil action, Cinemark filed a complaint against the Department of Justice, Bill Lann Lee, and John L. Wodatch, alleging that, since 1998, they have impermissibly, and without notice and other due process, promulgated a new rule of law in violation of the APA. Cinemark claims that the Department of Justice's promulgation of a change in the law without prior notice, and its attempt to enforce its new rule retroactively, are violations of the APA, the ADA, and the Constitution. As a remedy, Cinemark seeks to obtain a declaratory judgment that "the Department's actions and omissions are illegal, to prevent improper rulemaking, and to protect Cinemark's due process and other procedural and substantive statutory and constitutional rights."

In the matter before this Court, the United States of America—represented by

court-ordered replies. FED. R. CIV. P. 12(a). Because the Court granted the parties' stipulation that Defendant shall have additional time to answer *or otherwise plead in response*

*to the Complaint,* Defendant's motion to dismiss on grounds other than FED. R. CIV. P. 12(b), or to transfer or stay this matter, is properly filed as a court-ordered reply.

Emily M. Sweeney, the United States Attorney for the Northern District of Ohio, and Bill Lann Lee, the Acting Assistant Attorney General for Civil Rights— brought suit against Defendant alleging that, since 1995, Defendant has violated the ADA by designing, constructing, and/or operating movie theaters in Ohio and throughout the United States that deny access to persons with disabilities who use wheelchairs. As a remedy, the United States seeks a declaration that Defendant has violated the ADA in the design and construction of its movie theaters in Ohio and throughout the United States; an order that Defendant undertake repairs of its stadium-style theaters; an injunction against Defendant from taking any further action in designing or constructing stadium-style theaters that do not comply with the ADA; a civil penalty; and compensatory damages for those persons with disabilities who were discriminated against by Defendant.

The two lawsuits are not "materially on all fours with the other" and do not have such an identity of issues "that a determination in one action leaves little or nothing to be determined in the other." *Smith,* 129 F.3d at 361. A determination that the Department of Justice violated the APA would not leave "little or nothing to be determined" in the matter at hand, *i.e.,* whether or not Defendant's theaters in Ohio and elsewhere violate the ADA. As Cinemark noted, its Texas suit is "an independent suit for judicial review of agency action", while the United States of America's suit is to enforce the protections guaranteed by the Americans with Disabilities Act.

The issue of whether Defendant is in violation of the ADA can be decided regardless of whether the Department of Justice has violated the APA by promulgating a new or incompatible interpretation of the ADA Accessibility Guidelines. *See, e.g., Chevron, U.S.A., Inc. v. Natural*

*Resources Defense Council, Inc.,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (stating that the "judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent."). In fact, the federal court for the Western District of Texas found, according to its own reading of the "clear and unambiguous" statute and regulation, 'that Cinemark is in violation of the ADA.

The Court is mindful of the Supreme Court's charge that: "Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of [multiple litigation in the federal judicial system]. The factors relevant to wise administration here are equitable in nature." *Kerotest,* 342 U.S. at 183, 72 S.Ct. 219, *quoted in Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236. In the case at hand, dismissal is not appropriate because Cinemark's Texas lawsuit and the case *sub judice* are not duplicative; the two lawsuits are not "materially on all fours with the other" and do not have such an identity of issues "that a determination in one action leaves little or nothing to be determined in the other." *Smith,* 129 F.3d at 361.[2] Relevant law, as well as wise judicial administration, counsels against dismissal of this case; Defendant's Motion to Dismiss therefore fails.

## II. Defendant's Argument for Transfer

■ Defendant moves for a change of venue pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "Under 28 U.S.C. § 1404(a), a district court 'has broad discretion to grant or deny a motion to transfer [a] case.'" *Phelps v.*

2. In addition, Plaintiff's claims here are not compulsory counterclaims to Defendant's

Texas lawsuit. *See* FED. R. CIV. P. 13(a).

*McClellan,* 30 F.3d 658, 663 (6th Cir.1994)(quoting *Cote v. Wadel,* 796 F.2d 981, 985 (7th Cir.1986)).

■ "[A] district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Express, Inc.,* 929 F.2d 1131, 1137 (6th Cir.1991). These private and public interests include the plaintiff's choice of forum, location of documents, convenience of witnesses, possibility of prejudice in either forum, and the practical problems associated with trying the case expeditiously and inexpensively. *See West American Ins. Co. v. Potts,* 908 F.2d 974, 1990 WL 104034, at * 2 (6th Cir. July 25, 1990)(unpublished). Because the Defendant is the party requesting the transfer, "it bears the burden of proof to show the factors weigh 'strongly' in favor of transfer." *Picker Intern., Inc. v. Travelers Indem. Co.,* 35 F.Supp.2d 570, 573 (N.D.Ohio 1998)(citing *Bacik v. Peek,* 888 F.Supp. 1405, 1414 (N.D.Ohio 1993)); *see also Jeffrey Mining Prods. v. Left Fork Mining Co.,* 992 F.Supp. 937, 938 (N.D.Ohio 1997) ("For a proper transfer in the Sixth Circuit, the balance of all relevant factors must weigh 'strongly in favor of transfer.'").

### A. Defendant's Proposed Forum

■ The threshold task is to discern whether this lawsuit "might have been brought" in the proposed transferee forum. Obviously, if the suit could not have been brought in the district which Defendant suggests, there is no need to consider the issue further. Defendant urges the Court to transfer the case to the Northern District of Texas, where it filed suit against the Department of Justice two days after receiving the Plaintiff's rejection of Defendant's settlement proposal. Defendant argues that the "DOJ has already made an appearance in the first-filed Dallas lawsuit, and venue is undisputedly proper there." However, although Defen-

dant notes that it operates 19 stadium-style movie theater complexes in Texas, it does not specifically assert in its Motion that any of those complexes, or its headquarters, are in the Northern District of Texas. Further, not one of the five lawsuits brought against Defendant by private individuals is in the Northern District of Texas, raising additional doubt if venue would be proper in the Northern District of Texas. (*See* Def's Mot. to Dismiss at 10 n. 12.) Defendant's headquarters are in the Eastern District of Texas. Thus, Defendant does not reside in the Northern District of Texas and it is unclear whether any events or omissions giving rise to the claim occurred there. Conversely, Defendant operates four stadium-style theater complexes in the Northern District of Ohio.

Even assuming *arguendo* that this lawsuit by the United States could have been brought in the Northern District of Texas, the Court would not transfer this lawsuit because, as discussed further below, Defendant—the party requesting the transfer—has not met its burden of proof to show the factors weigh strongly in favor of transfer. *See, e.g., Picker,* 35 F.Supp.2d at 573; *Jeffrey Mining Prods.,* 992 F.Supp. at 938.

### B. Plaintiff's Choice of Forum

■ Plaintiff's choice of forum should be given "great" or "substantial" weight when considering whether to transfer a case under § 1404(a). *Picker,* 35 F.Supp.2d at 573; *Central States, Southeast & Southwest Areas Health & Welfare Fund v. Guarantee Trust Life Ins. Co.,* 8 F.Supp.2d 1008, 1010 (N.D.Ohio 1998). Defendant argues that Plaintiff's choice of forum should be considered, at most, as merely one factor to be weighed equally with others. There has been thoughtful analysis by numerous courts regarding how much weight to give a plaintiff's choice of forum when that choice is challenged by a § 1404(a) motion. After reviewing the relevant caselaw, as well as

the parties' arguments, this Court finds that the "substantial weight" standard is the appropriate one.[3] *See West American Ins. Co.*, 908 F.2d 974, 1990 WL 104034 at * 2 ("Foremost consideration must be given to the plaintiff's choice of forum."); *Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir.1951) ("[U]nless the balance is strongly in favor of the defendant the plaintiff's choice of forum should rarely be disturbed."); *Picker*, 35 F.Supp.2d at 573 (Wells, J.) ("[P]laintiff's choice of forum must be given 'great weight' when considering whether to transfer venue under § 1404(a)."); *Central States*, 8 F.Supp.2d at 1010 (Katz, J.) ("A plaintiff's choice of forum is generally entitled to be given substantial weight."); *United States ex rel. Roby v. Boeing Co.*, No. C–1–95–375, 1998 WL 54976, at *3 (S.D.Ohio Jan.21, 1998) (Spiegel, J.) ("Given that the balance does not strongly favor [Defendant], we are reluctant to disturb Plaintiff's choice of forum."); *Jeffrey Mining Prods.*, 992 F.Supp. at 938 (Gwin, J.) ("[T]he plaintiff's choice of forum is entitled to 'great weight.' "); *Douglas v. Modern Aero, Inc.*, 954 F.Supp. 1206, 1208 n. 2 (N.D.Ohio 1997) (Carr, J.) ("In exercising this power [to transfer], the court gives great deference to the plaintiff's choice of forum, and will not transfer the case unless the moving party shows that transfer is strongly favored by equity."); *Bacik*, 888 F.Supp. at 1414 (Bell, J.) ("It has been said that plaintiff's choice of forum is entitled to 'great weight.' "); *United States ex rel. Grand v. Northrop Corp.*, 811 F.Supp. 330, 332 (S.D.Ohio 1992) (Spiegel, J.) (" '[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.' "); *Midwest Motor Supply Co. v. Kimball*, 761 F.Supp. 1316, 1318 (S.D.Ohio 1991) (Holschuh, C.J.) (" '[T]he plaintiff's choice of forum is to be given considerable weight ....' "); *Hanning v. New England Mutual Life Ins. Co.*, 710 F.Supp. 213, 214 (S.D.Ohio 1989)

(Graham, J.) ("The plaintiff's choice of forum is to be given considerable weight and the balance of convenience, considering all of the relevant factors, should be strongly in favor of a transfer before such will be granted.") (citing additional cases); *Gdovin v. Catawba Rental Co.*, 596 F.Supp. 1325, 1327 (N.D.Ohio 1984) (Battisti, C.J.) ("This Court ... places great weight on Plaintiff's original choice of forum."). *Cf. Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 413 (6th Cir.1998) ("While [Plaintiff] correctly points out that a plaintiff's choice of forum should be given weight when deciding whether to grant a motion to change venue, this factor is not dispositive."); *Armco, Inc. v. Reliance National Ins. Co.*, No. C–1–96–1149, 1997 WL 311474, at *3 (S.D.Ohio May 30, 1997) (Dlott, J.) ("While a plaintiff's choice of forum is still a factor to be considered in ruling upon a motion to transfer, the enactment of § 1404(a) has given the trial court broader discretion."); *International Union, U.A.W. v. Aluminum Co. of America*, 875 F.Supp. 430, 433 (N.D.Ohio 1995) (O'Malley, J.) ("While this Court agrees that the plaintiff's choice of forum is to be awarded some weight, it is not of paramount importance; it is instead one factor to be weighed equally with other relevant factors ."); *Roberts Metals, Inc. v. Florida Properties Marketing Group*, 138 F.R.D. 89, 93 (N.D.Ohio 1991) (Batchelder, J.) ("Although the choice of forum factor weighs in favor of denying the motion for transfer, plaintiff's choice is only one factor in the transfer decision."); *DeMoss v. First Artists Production Co.*, 571 F.Supp. 409, 413 (N.D.Ohio 1983) (Aldrich, J.) (Although "the balance [of factors] must weigh 'strongly in favor of transfer' before a § 1404(a) motion is granted", plaintiff's choice of forum is not of "paramount importance, but simply ... one factor to be weighed equally with other relevant factors."), *appeal dismissed*, 734 F.2d 14 (6th

**3.** For a catalogue of cases whereby "courts have developed a bewildering variety of formulations on how much weight is to be given to plaintiff's choice of forum", see 15 CHARLES

ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3848 (2d ed. 1986 & Supp.1999).

Cir.1984); *Neff Athletic Lettering Co. v. Walters,* 524 F.Supp. 268, 272 (S.D.Ohio 1981) (Rice, J.) (Plaintiff's choice of forum factor "is simply one to be considered and weighed equally with other relevant criteria.").

The rationale for giving a plaintiff's choice of forum "substantial weight"—as opposed to equal or little weight—is that, unlike defendant forum shopping, plaintiff forum shopping "is not an evil to be avoided, but rather is an inherent part of our federal court network. A plaintiff may have available numerous places of equal convenience to bring his or her suit, and has every right to file in the forum that is most geographically convenient or that has the most favorable law." Stowell R.R. Kellner, Note, *"Adrift on an Uncharted Sea": A Survey of Section 1404(a) Transfer in the Federal System,* 67 N.Y.U.L. REV. 612, 638 (1992). The fact that plaintiffs have some flexibility to shop for law or location encourages them to use the judicial system for their disputes. *See id.* at 639. Having chosen a forum, a plaintiff would lose any advantage if the defendant were able—by scarcely overcoming the plaintiff's choice—to pull the well-placed procedural rug from under the plaintiff's feet. *See, e.g., Ferens v. John Deere Co.,* 494 U.S. 516, 528, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990) ("Section 1404(a) ... exists to make venue convenient and should not allow the defendant to use inconvenience to discourage plaintiffs from exercising the opportunities that they already have."). Giving "substantial weight" to a plaintiff's choice of forum, then, places the initial advantage with the plaintiff and the burden with the defendant to adequately justify the reasons for the proposed transfer.

■ When a plaintiff has little or no connection to the chosen forum, however, the plaintiff's reason for choosing the forum—and remaining in the forum—is diminished and thus should be given less weight. *Armco,* 1997 WL 311474 at *3; *Central States,* 8 F.Supp.2d at 1010–11. Under these circumstances, transferring the case generally would not result in great hardship because, as the Supreme Court held in *Ferens,* when a case is transferred under § 1404(a), the transferee forum is required to apply the law of the transferor court, regardless of who initiated the transfer. 494 U.S. at 523–33, 110 S.Ct. 1274. In the matter at hand, Plaintiff's choice deserves "substantial weight" because Defendant operates four stadium-style theater complexes in the Northern District of Ohio which, among others, the United States is challenging as being in violation of the ADA.

## C. Convenience of the Parties and Witnesses

■ Convenience of the parties and witnesses is an important factor to weigh in the balance. *See Picker,* 35 F.Supp.2d at 573. Plaintiff and Plaintiff's counsel, not surprisingly, feel perfectly content in the Northern District of Ohio. Ms. Sweeney and her assistants are located just down the street from this court house. Mr. Lee and his associates are located in Washington, D.C., but apparently do not mind the occasional flight to Cleveland. Defendant and Defendant's counsel are apparently not so content here. Defendant's lead counsel is located in Texas. However, as all counsel agreed at the Case Management Conference, this case consists primarily, if not exclusively, of legal issues and not factual issues, with a limited amount of discovery expected. In such a situation, the Court expects that there will be minimal, if any, court appearances and that the case may be decided on the papers. With technological advances such as electronic filing in this district, as well as the "modern miracles" of photographic reproduction, scanners, faxes, video, teleconferencing, and next-day airmail delivery, the inconvenience of Defendant and its Texas counsel cannot override Plaintiff's choice of forum.

Because this appears to be a case driven by the legal issues involved, any witnesses may never see the court house doors. De-

positions can be effectively taken in Plaintiff's and Defendant's respective home cities. To the extent that live testimony would be required, the Northern District of Ohio is more convenient for Plaintiff's Ohio witnesses, as it would be, presumably, for Plaintiff's experts. Defendant's witnesses are mostly in Texas, with some in Missouri. On balance, this factor may favor Defendant if witnesses were required to enter an appearance in Cleveland. However, as this case is likely to result in a legal determination of whether or not Defendant's theaters violate the plain language of the ADA, this factor is minimal and favors neither party.

### D. Location of Events

■ Four of Defendant's stadium-style theater complexes are located in the Northern District of Ohio. Pursuant to its authority to enforce the ADA, the United States has brought this lawsuit on behalf of Ohioans and others throughout the United States who are confined to wheelchairs. While much of the design stage may have occurred in Texas and Missouri, the construction and operation of these stadium-style theater complexes is in the Northern District of Ohio. Defendant argues that there are a greater number of its stadium-style theater complexes in Texas. While this may be true, and therefore Plaintiff could have brought its lawsuit in some district in Texas, Defendant's argument cannot overcome Plaintiff's choice of forum, especially as the Defendant constructed and operates four complexes in the Northern District of Ohio where ongoing violations of the ADA are allegedly taking place.

### E. Location of Documents and Evidence

■ While "the location of physical evidence such as the wreckage of a crashed plane ought to be given more weight in the balancing analysis under § 1404(a)", "the location of documentary evidence is a minor consideration." *Picker*, 35 F.Supp.2d at 574. In this case, the evidence consists of documents "which may easily be sent by mail, copied, or even faxed to a remote location." *Id.* To the extent that either of the parties, for some reason, wanted a jury or court viewing of the stadium-seating theaters, there are four located in the Northern District of Ohio.

### F. Other Interests

■ The Court is not aware of any possibility of prejudice in either forum, and the practical problems associated with trying the case expeditiously and inexpensively are minimal. The parties do not contend that one district court would be more familiar with the ADA than the other, nor do they contend that this case would be unduly delayed in either district. To the extent that financial assets should be considered in a motion to transfer, the Court finds both parties amply situated to continue this matter in the Northern District of Ohio. *See AMF Inc. v. Computer Automation, Inc.*, 532 F.Supp. 1335, 1344 (S.D.Ohio 1982) (concluding that the cost to the defendant in litigating the case did not furnish a reason for transfer).

■ Plaintiff has chosen Ohio as its forum, a decision which this Court affords substantial weight and which the Defendant has not sufficiently rebutted. In sum, Defendant has not met its burden of showing that the balance of all relevant factors weighs strongly in favor of transfer. *See West American Ins. Co.*, 908 F.2d 974, 1990 WL 104034 at *2 ("A motion for change of venue is properly granted when the balance weighs 'strongly in favor of transfer.'"); *Bacik*, 888 F.Supp. at 1414 ("What is clear, at least in th[e Sixth] Circuit, is that for a court to properly grant transfer the balance of all relevant factors must weigh 'strongly in favor of transfer.'"). Therefore, Defendant's Motion to Transfer is denied.

### III. Defendant's Argument for a Stay

■ Defendant argues that the Court should stay this case while their Dallas lawsuit against the Department of Justice for infractions of the APA is proceeding.

Defendant maintains that the "longer these legal issues remain unresolved, the more risk Cinemark, and all builders of assembly areas face." Cinemark plans to open 294 new movie screens in 1999 at a cost of $140 million. Defendant states that it "has already devoted substantial time, energy, and expense towards planning the construction of these movie theaters. In many cases, it has purchased land, made required public filings and legal notices, and entered into expensive, legally binding and time-sensitive construction contracts with engineers, developers, and architects." It is for these reasons that the Court will not enter a stay in this case.

The United States has filed a lawsuit charging that Defendant has violated, is violating, and will violate the Americans with Disabilities Act, in Ohio and throughout the United States. It would be imprudent to stay these proceedings so that Defendant may continue to argue to the district court in Texas that the Department of Justice violated the Administrative Procedure Act, while, at the same time it is arguing in Texas, it is continuing to operate and construct stadium-style theater complexes in Ohio and elsewhere that are allegedly in violation of the ADA.

If Defendant is not in violation of the ADA, it should want an expeditious ruling that proclaims as much, in order to confidently continue its rapid building program. If, however, Defendant is in violation of the ADA, it should also want an expeditious ruling, in order to alter its ongoing construction plans before new buildings are completed and more expensive changes are required. Defendant's Motion to Stay is denied.

### Conclusion

For the foregoing reasons, Defendant Cinemark's Motion to Dismiss, Transfer, or Stay (Document # 5) is DENIED in its entirety.

IT IS SO ORDERED.